IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ESTATE OF BETHANY NOELLE SCHUCH**, *by and through Lesley Arle, Personal Representative of the Estate of Bethany Noelle Schuch*, and **JUSTIN COLEMAN**, *an individual*,<br><br>            Plaintiffs,<br><br>       v.<br><br>**STATE FARM FIRE AND CASUALTY COMPANY**, *an Illinois company*,<br><br>            Defendant. | Case No. 3:21-cv-37-SI<br><br>**OPINION AND ORDER** |

Emily S. Miller and Margaret E. Schroeder, MILLER INSURANCE LAW LLC, 521 SW Clay Street, Portland, OR 97201. Of Attorneys for Plaintiff Estate of Bethany Noelle Schuch.

Troy S. Bundy and Taylor Lewis, HART WAGNER LLP, 1000 SW Broadway, 20th Floor, Portland, OR 97025. Of Attorneys for Plaintiff Justin Coleman.

David P. Rossmiller and Elissa M. Boyd, BETTS, PATTERSON & MINES, P.S., 111 SW Fifth Avenue, Suite 3650, Portland, OR 97024. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

At all times relevant to this lawsuit, Plaintiff Justin Coleman (Coleman) was a licensed gun dealer in Oregon. In March 2018, Coleman transferred a semi-automatic rifle from his private collection to his personal friend David Cote (Cote). Coleman received no payment for the

gun, and he willfully failed to run a background check on Cote, which was required under Oregon law. Plaintiff Estate of Bethany Noelle Schuch (Estate) is the estate of decedent Bethany Noelle Schuch (Schuch). Cote and Schuch were previously in a romantic relationship, which ended shortly before Coleman gave Cote the rifle. After receiving the rifle from Coleman, Cote shot and killed Schuch and then shot and killed himself.

The Estate sued Coleman and others in Clackamas County Circuit Court (the Underlying Lawsuit). After filing an original Complaint (ECF 19-1), the Estate filed a First Amended Complaint (FAC) (ECF 19-4), and then a Second Amended Complaint (SAC) (ECF 17-1). Currently, the SAC is the operative pleading in the Underlying Lawsuit. Coleman tendered his defense in the Underlying Lawsuit to his insurer, Defendant State Farm Fire and Casualty Company (State Farm) under Coleman's homeowners' insurance policy with State Farm (Policy). State Farm declined to defend Coleman. Coleman assigned to the Estate a portion of Coleman's rights to recover defense costs from State Farm. The Estate then sued both State Farm and Coleman in a separate state court lawsuit in Multnomah County Circuit Court, which State Farm removed to federal court, resulting in this action. The Court then realigned the parties, resulting in the Estate and Coleman each being designated as a Plaintiff and State Farm being designated as the sole Defendant.

Now pending before the Court are four motions. First, the Estate and Coleman jointly move for partial summary judgment concerning defense coverage under the SAC in the Underlying Lawsuit. The Estate and Coleman jointly seek a declaration that State Farm has a duty to defend Coleman against the SAC in the Underlying Lawsuit and partial summary judgment in favor of the Estate on its breach of contract claim against State Farm. ECF 15. Second, State Farm cross moves for partial summary judgment, seeking a declaration that it has

no duty to defend Coleman against the SAC. ECF 20. Third, Coleman moves for summary judgment in his favor on all claims that he asserts against State Farm. ECF 18. Finally, State Farm cross moves for partial summary judgment, seeking a declaration that State Farm had no duty to defend Coleman against the allegations presented in either the original Complaint or the FAC in the Underlying Lawsuit. ECF 21.

## STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (simplified).

When parties cross-move for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (simplified); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-

motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

**B.  Policy Interpretation Under Oregon Law**

In almost all circumstances, under Oregon law an insurer's duty to defend depends on only two documents: the insurance policy and the complaint. *See Oakridge Cmty. Ambulance Serv., Inc. v. U.S. Fid. & Guar. Co.*, 278 Or. 21, 24 (1977). "An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy." *Ledford v. Gutoski*, 319 Or. 397, 399-400 (1994) (citation omitted). If one claim alleged in a complaint is within a policy's coverage, the insurer has a duty to defend, even if there are other claims alleged that are not within the coverage of the policy. *See Marleau v. Truck Ins. Exch.*, 333 Or. 82, 91 (2001); *see also Ferguson v. Birmingham Fire Ins. Co.*, 254 Or. 496, 506 (1969); *Ledford*, 319 Or. at 400 ("The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage." (emphasis in original)).

In addition, interpreting an insurance policy is a matter of law, with the primary objective to determine the intent of the parties. *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of*

*Or.*, 313 Or. 464, 469 (1992). Determining the parties' intent is a three-step process. First, the Court examines the policy to determine whether it is ambiguous.¹ If there is no ambiguity, the policy is interpreted according to its plain meaning. *See Andres v. Am. Standard Ins. Co. of Wis.*, 205 Or. App. 419, 423 (2006); *see also Hoffman*, 313 Or. at 469-70. "Oregon courts refer to the dictionary when determining the . . . plain meaning of an undefined term in an insurance policy, except where that term has already been construed by a previous court; there, the court construes the disputed term consistent with relevant precedent." *Leander Land & Livestock, Inc. v. Am. Econ. Ins. Co.*, 2013 WL 1786348, at *2 (D. Or. April 21, 2013). If the policy's text is ambiguous, however, the second step is to examine the disputed terms in the broader context of the policy as a whole. *Andres*, 205 Or. App. at 424. Finally, "[i]f—and only if—the ambiguity persists, we construe the policy against the drafter, in this case, defendant." *Andres*, 204 Or. App. at 424.²

## BACKGROUND

On March 7, 2018, Cote, armed with the semi-automatic rifle given to him by Coleman, broke into the home of the mother of his former girlfriend, Schuch. Cote shot Schuch three times, killing her then killing himself. Coleman, who had a federal gun dealer license at the time, gave Cote the rifle after Cote asked Coleman for a rifle "off the books" so that Cote could "get

---

¹ Text is ambiguous when it is susceptible to more than one reasonable interpretation. *See Hoffman*, 313 Or. at 470.

² Oregon law generally interprets contracts through the *Yogman* analysis, which permits the use of extrinsic evidence if a court finds ambiguity. *See Yogman v. Parrott*, 325 Or. 358, 363 (1997). Under Oregon insurance law, however, courts do not interpret insurance policies using the *Yogman* analysis and instead follow the three-step process stated in *Hoffman*. *See Andres*, 205 Or. App. at 424 ("[T]he court has been clear since *Hoffman Construction Co.* that the interpretation of insurance policies is a question of law, not one that is resolved by reference to evidence extrinsic to the policy itself.").

Case 3:21-cv-00037-SI    Document 31    Filed 08/04/21    Page 6 of 18

his dog back." SAC (ECF 17-1) ¶ 7. Cote had previously discussed Schuch with Coleman by "jok[ing] about getting his dog back." *Id.* ¶ 10. Because Coleman transferred the rifle to Cote without first having the Oregon State Police run a background check on Cote, the State of Oregon charged Coleman with the misdemeanor offense of improperly transferring a firearm in violation of Oregon Revised Statutes (ORS) § 166.418. Coleman pleaded guilty to that charge.

The Estate brought a civil action for wrongful death against Coleman and others in state court. In its original Complaint, the Estate alleged against Coleman the following claims: wrongful death (specifying one count of negligent entrustment and a separate count of negligence *per se*); a survival action; intentional infliction of emotional distress; and assault and battery. ECF 19-1. In its FAC, the Estate alleged against Coleman only two claims: wrongful death and a survival action. ECF 19-4. Similarly, in its SAC, the Estate alleged against Coleman only two claims: wrongful death and a survival action. ECF 17-1. The Estate filed its SAC on March 3, 2020. *Id.*

On several occasions, Coleman tendered the defense of the Underlying Lawsuit to State Farm, and each time State Farm declined to defend Coleman under the Policy. On August 28, 2020, the Estate and Coleman entered into a Limited Assignment Agreement (LAA). ECF 17-4. Under the LAA, Coleman partially assigned and transferred to the Estate Coleman's claims against State Farm for breaching its duty to defend him against the SAC in the Underlying Lawsuit. In a separate state court lawsuit, Coleman and the Estate jointly sued State Farm, asserting that State Farm has a duty to defend Coleman against the SAC in the Underlying Lawsuit. In that lawsuit, Coleman also separately asserts a claim against State Farm for damages in the amount that Coleman has already incurred defending against the original Complaint and

PAGE 6 – OPINION AND ORDER

the FAC in the Underlying Lawsuit. State Farm timely removed the coverage lawsuit to this Court, which is the pending action.

## DISCUSSION

In a diversity case, although federal law governs the procedures followed, including providing the summary judgment standard, state law provides the relevant substantive law. *See Gasperini v. Ctr. for the Humanities*, 518 U.S. 415, 427 (1996). The Estate and Coleman argue that State Farm has a duty to defend Coleman under Oregon law. State Farm responds that there is no duty to defend because none of the complaints in the Underlying Lawsuit (the original Complaint, the FAC, and the SAC) allege an "occurrence" necessary to place Coleman's actions within the Policy's coverage. Alternatively, State Farm argues that even if the Estate alleges an occurrence, three exclusions to coverage apply. According to State Farm, the applicable exclusions are for: (1) business pursuits; (2) expected or intended injury; and (3) willful and malicious acts. Coleman need show only one claim that is covered by the Policy to trigger State Farm's duty to defend under Oregon law. *See Marleau*, 333 Or. at 91.

To resolve the four pending motions, the Court must separately consider the allegations made in the original Complaint, the FAC, and the SAC. Many of State Farm's arguments, however, rely on the allegations made by the Estate without distinguishing among the different complaints or claims. The Court addresses each complaint and claim in turn.

### A. The Second Amended Complaint

#### 1. Caused by an Occurrence

Under the Policy, State Farm will provide a defense when "a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which . . . coverage applies." ECF 2-3 at 31. Coverage applies when the damages were "caused by an occurrence." *Id.* The Policy defines "occurrence" as "an accident, including exposure to

conditions," that results in bodily injury or property damage during the policy period. *Id.* at 35. "Accident" is not defined in the Policy, "but the term's meaning in liability insurance policies is well established and unambiguous." *Mut. of Enumclaw Ins. Co. v. Gutman*, 172 Or. App. 528, 534 (2001). "Damages because of bodily injury are caused by an occurrence, *unless the insured subjectively intended* to cause the particular injuries that produced the damages." *Id.* (emphasis added).

Plaintiffs cannot create a duty to defend merely by labeling intentionally injurious conduct as negligence, and finding an occurrence depends on "the 'conduct' alleged" rather than "the labels placed on counts in a complaint alone." *L & D of Or. v. Am. States Ins. Co.*, 171 Or. App. 17, 20 (2000). Thus, whether Coleman's actions constitute an occurrence depends on whether the wrongful death claim alleges that Coleman *intended* for the harm to occur. *Ledford*, 319 Or. at 401; see also *Drake v. Mut. of Enumclaw Ins. Co.*, 167 Or. App. 475, 481 (2000) ("[An occurence] does not focus on the intentionality of plaintiffs' conduct but, rather, looks to whether they intended to cause injury.").

Plaintiffs assert that the SAC alleges an occurrence in the wrongful death claim because the SAC alleges that "Coleman should have known that transferring the [rifle] to Cote created an unreasonable and foreseeable risk [of harm to] Schuch." SAC (ECF 17-1) ¶ 13. The conduct alleged in the wrongful death claim supports the Estate's negligence allegation and does not compel the conclusion that Coleman subjectively intended to cause harm to Schuch. The wrongful death claim alleges that Coleman was aware that Cote did not believe he could clear a background check, that Coleman knew or should have known that Cote intended to use the rifle against Schuch, and that Coleman should have known that transferring the rifle to Cote created a foreseeable risk of harm to Schuch.

PAGE 8 – OPINION AND ORDER

Even drawing all reasonable inferences in State Farm's favor, the SAC does not allege that Coleman transferred the rifle with the intention that Cote would use the rifle to murder (or even assault) Schuch. The allegations show that Coleman intentionally broke the law when he transferred "'an SKS off the books' to Cote so that Cote could 'get [his] dog back lol.'" *Id.* at 2. Those allegations, however, do not compel the conclusion that Coleman knew and shared Cote's intent to murder Schuch (or even assault her) when Coleman transferred the rifle to Cote. Thus, the wrongful death claim alleged in the SAC meets the "occurrence" requirement and falls within the Policy's coverage.

State Farm contends that Coleman transferred the firearm to Cote with intent to cause bodily injury, thereby falling outside the definition of "occurrence" and, thus, the Policy's coverage. To fall outside the definition of "occurrence," the insured must intend the particular harm that occurred. *Cf. Mut. of Enumclaw Ins. Co.*, 172 Or. App. at 534 ("Damages because of bodily injury are caused by an occurrence, unless the insured subjectively intended to cause the *particular injuries* that produced the damages." (emphasis in original)). As explained above, however, the allegations in the SAC do not compel the conclusion that Coleman intended for Cote to murder or assault Schuch. Thus, the SAC does not allege Coleman intended the particular harm that resulted. The SAC, therefore, has stated an occurrence.

### 2. Business Pursuits Exclusion

The Policy states that coverage does not apply to "bodily injury or property damage arising out of business pursuits of any insured." ECF 2-3 at 24 (simplified). The Policy defines "business" as "a trade, profession or occupation." *Id.* at 9. The words "trade," "profession," and "occupation" are not defined in the Policy and thus take their plain meaning. *See Leander Land & Livestock*, 2013 WL 1786348, at *2.

State Farm argues that Coleman's criminal conviction precludes Plaintiffs from denying the application of the business pursuits exclusion. *See State Farm Fire & Cas. Co. v. Sallak*, 140 Or. App. 89, 92 (1996) ("An insured may be precluded from contending that insurance coverage is available if, in an earlier proceeding, the facts establishing that coverage is not available have necessarily and conclusively been determined"). State Farm asserts that Coleman's conviction under ORS § 166.418 conclusively determines that Coleman's transfer of the rifle to Cote was part of Coleman's "business pursuit."

Issue preclusion is appropriate when:

> (1) the issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding; and (5) the prior proceeding was the type of proceeding to which this court will give preclusive effect.

*Johnson & Lechman-Su, P.C. v. Sternberg*, 272 Or. App. 243, 246 (2015) (simplified). "Even where those elements are met, '[t]he court must also consider the fairness under all the circumstances of precluding a party.'" *Minihan v. Stiglich*, 258 Or. App. 839, 855 (2013) (quoting *State Farm v. Century Home*, 274 Or. 97, 110 (1976)). The parties dispute the first and second elements.

Coleman pleaded guilty to improperly transferring a firearm in violation of ORS § 166.418. Plaintiffs assert that the issue in Coleman's criminal proceeding is not identical to the issue here because ORS § 166.418 applies based on the person's status as a gun dealer and not the nature of the transfer. That statute provides that a "person commits the crime of improperly transferring a firearm if the person *is a gun dealer as defined in ORS § 166.412* and sells, leases

PAGE 10 – OPINION AND ORDER

or otherwise transfers a firearm and intentionally violates ORS 166.412."[3] ORS § 166.418(1) (emphasis added). Thus, Coleman's guilty plea conclusively establishes three facts: (1) Coleman was a "gun dealer" as defined in ORS § 166.412; (2) Coleman sold, leased, or otherwise transferred a firearm; and (3) Coleman intentionally violated ORS § 166.412.

State Farm contends it is the first fact, Coleman's status as a "gun dealer" that conclusively establishes that Coleman was acting in a "business pursuit." "Gun dealer," however, is defined in ORS § 166.412(1)(f) as "a person engaged in the business, as defined in 18 U.S.C. [§] 921, of selling, leasing or otherwise transferring a firearm." Section 921, in turn, provides multiple definitions of "engaged in the business" that depend on whether the individual is a dealer, manufacturer, or importer of firearms. 18 U.S.C. § 921(a)(21)(A)-(F) (2019). The definition for "dealers" is appropriate here because Coleman is neither a manufacturer nor an importer of firearms.

> [A]s applied to a dealer in firearms . . . a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall *not* include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his *personal collection* of firearms[.]

*Id.* § 921(a)(21)(C) (emphasis added). Thus, when Coleman pleaded guilty to being a "gun dealer" and illegally transferring a firearm to Cote, he affirmatively asserted that he was "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business," rather than "a person who makes occasional sales, exchanges, or purchases of

---

[3] ORS § 166.412 requires that gun dealers run a background check through the Oregon State Police on any purchaser before the gun dealer may sell or otherwise transfer a gun. ORS § 166.412(2). Purchaser is defined as "a person who buys, leases or otherwise receives a firearm from a gun dealer." ORS § 166.412(1)(g).

PAGE 11 – OPINION AND ORDER

firearms." *Id.* That Coleman regularly sells firearms, however, reveals nothing about the nature of the specific transfer of his rifle to Cote. Indeed, a person who regularly trades in firearms remains a gun dealer under § 921 even if they make occasional sales or transfers from a personal collection or as a hobby without receiving any payment. Because § 921 conclusively establishes only that Coleman regularly sold firearms, not that his transfer to Cote of the rifle at issue was part of a business transaction, the issues are not identical. *See State v. Hunt*, 161 Or. App. 338, 342 (1999) (allowing issue preclusion only when the earlier proceeding conclusively determined the precise issue).

      Nor do the remaining elements of ORS § 166.418 necessarily establish that Coleman was engaged in a business transaction when he transferred the rifle to Cote. A gun dealer violates ORS § 166.418 by selling, leasing, or *otherwise transferring* a firearm in violation of ORS § 166.412. Coleman could have violated § 166.418 by transferring, rather than selling (or even leasing) the rifle to Cote. Finally, nothing in ORS § 166.412 requires a business transaction. *See* note 3, *supra*. Because the issue in Coleman's criminal proceeding is not identical to the issue in this proceeding, issue preclusion is not appropriate here.

      Because there is no issue preclusion, the Court finds that the business pursuits exclusion does not relieve State Farm of its duty to defend Coleman in the Underlying Lawsuit. The business pursuits exclusion applies only if the facts alleged in the SAC compel the conclusion that Coleman was involved in a business pursuit. *See Ferguson*, 254 Or. at 506. The SAC, however, does not allege that Coleman was acting in a business capacity or selling (or leasing) the rifle to Cote. Instead, the SAC alleges:

> Coleman, in his individual capacity, had owned the 7.62-caliber SKS semi-automatic rifle for several years as part of his private collection that he maintained for his own personal use and enjoyment. Coleman had two such SKS rifles in his private

>collection and was willing to part with one for his friend. Coleman transferred the 7.62-caliber SKS semiautomatic rifle to Cote "off the books" and received no payment for it.

ECF 17-1 at 2. Thus, the business pursuits exclusion does not apply because the wrongful death claim explicitly alleges that Coleman acted in a personal capacity and did not sell or receive payment for the rifle.

### 3. Expected or Intended Injury Exclusion

The Policy states that coverage does not apply to "bodily injury or property damage . . . which is either expected or intended" by the insured. ECF 2-3 at 24. The expected or intended injury exclusion analysis is similar to the "occurrence" analysis. *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 222 Or. App. 453, 469 (2008), *opinion adhered to as modified on reconsideration*, 225 Or. App. 257 (2009), *aff'd in part, rev'd in part on other grounds*, 349 Or. 117 (2010), *opinion adhered to as modified on reconsideration*, 349 Or. 657 (2011). Thus, for this exclusion to apply, Coleman must have subjectively intended the harm to Schuch. *See Nielsen v. St. Paul Cos.*, 283 Or. 277, 281 (1978) ("[T]he acts must have been committed for the purpose of inflicting the injury and harm before . . . a policy provision excluding intentional harm applies."). For the same reason that the Court concluded that the wrongful death claim in the SAC alleges an occurrence, the Court also concludes that the expected or intended injury exclusion does not apply here.

### 4. Willful and Malicious Acts Exclusion

The Policy states that coverage does not apply to "bodily injury or property damage . . . which is the result of willful and malicious acts of the insured." ECF 2-3 at 24 (simplified). Oregon courts have not interpreted the willful and malicious acts exclusion. Thus, *Hoffman* control this Court's interpretation. *See generally Andres*, 205 Or. App. at 423-24. Because the Policy does not define "willful and malicious," the words take their plain meaning. "Willful" is

PAGE 13 – OPINION AND ORDER

unambiguous, and all parties agree that the plain meaning of "willful" is deliberate. "Malicious" is defined as "given to, marked by, or arising from malice." *Malicious*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged ed. 2002). "Malice," in turn, is defined as:

> intention or desire to harm another usu[ally] seriously through doing something unlawful or otherwise unjustified **:** willfulness in the commission of a wrong **:** evil intention . . . conscious and deliberate transgression esp[ecially] of a moral code viewed as established by God accompanied by evil intention . . . revengeful or unfriendly feelings **:** ILL WILL, ENMITY."

*Malice*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged ed. 2002).

The parties rely on different definitions from Webster's Dictionary to support their respective positions. Plaintiffs argue that "malicious" means "with evil designs to harm another." ECF 15 at 26. State Farm, meanwhile, argues that "malicious" means "with a willfulness in commission of a wrong." ECF 20 at 23. State Farm's proffered interpretation of malicious is too broad. Other dictionaries support a narrower meaning of "malice" as intending harm against another.[4] Additionally, Oregon case law—not specific to insurance policies—defines "malice" as "the intentional doing of [an] injurious act without justification or excuse." *Johannsen v. Salem Hosp.*, 336 Or. 211, 217 (2003) (citation omitted). Finally, State Farm's own argument for why Coleman's actions were malicious more closely represents Plaintiffs', not State Farm's, proposed definition. State Farm, after all, argues that the exclusion applies because Coleman acted with intent to harm Schuch.

---

[4] "[T]he wish to harm or upset other people **:** the intention to do something wrong and esp[ecially] to cause injury." *Malice*, CAMBRIDGE ADVANCED LEARNER'S DICTIONARY, (4th ed. 2013), *available at* https://dictionary.cambridge.org/us/dictionary/english/malice. "The intention or desire to do evil or cause injury to another person; active ill will or hatred." *Malice,* Oxford English Dictionary, *available at* https://www.oed.com/view/Entry/112910?rskey=BGtYbO&result=1#eid.

The Court concludes that "willful and malicious" means an act done both deliberately and with intent to harm another. This interpretation does not require Coleman to intend the *particular* harm Schuch suffered, only that he acted intentionllay to harm her.[5] For the willful and malicious acts exclusion to apply to the wrongful death claim, the SAC must allege that Coleman intended to harm Schuch when Coleman intentionally transferred his rifle to Cote.

State Farm argues that the willful and malicious acts exclusion applies, extinguishing its duty to defend Coleman. Viewed in the light most favorable to Plaintiffs—the non-movant on State Farm's claim—and making all reasonable inferences in Plaintiffs' favor, the SAC does not allege that Coleman intended harm to Schuch when Coleman transferred his rifle to Cote. The SAC alleges that Coleman knew *or should have* known Cote's intention to use the rifle against Schuch. According to the SAC, Coleman and Cote exchanged text messages "discussing Coleman's transfer of 'an SKS off the books' to Cote so that Cote could 'get [his] dog back lol.'" ECF 17-1 at 2. The SAC further alleges that Cote previously referred to Schuch as "his dog" in conversations with Coleman and that Coleman knew that Cote believed he could not clear a background check. From these facts, Coleman should have known his transfer would result in harm to Schuch. Mere negligence, however, does not constitute malicious conduct. Coleman may have thought that Cote was joking, and that Cote was not going to use the rifle against Schuch. The SAC does not allege that Coleman knew that Cote's intent was to use the rifle

---

[5] This interpretation has the added benefit of giving different meanings to the "expected or intended injury" exclusion and the "willful and malicious acts" exclusion. *See N.Z. Ins. Co. v. Griffith Rubber Mills*, 270 Or. 71, 75 (1974) ("It is a fundamental rule in the construction of contracts that it is the duty of a court to construe a contract as a whole employing any reasonable method of interpretation so that no part of it is ignored and effect can be given to every word and phrase.").

against Schuch, only that Coleman knew or *should have known* that was Cote's intent. State Farm, thus, is not entitled to summary judgment on the willful and malicious acts exclusion.

Plaintiffs argue that the willful and malicious acts exclusion does not apply. Because State Farm has a duty defend Coleman if the Estate's claim *could* impose liability for conduct covered by the Policy, Plaintiffs' prevail as long as a reasonable trier of fact *could* find that Coleman did not intend any harm to Schuch when he intentionally transferred his rifle to Cote. As explained above, a reasonable trier of fact could find that Coleman merely acted negligently and did not intend that any harm come to Schuch. State Farm has a duty to defend the Underlying Lawsuit because Coleman's conduct could reasonably be found not to be malicious. *See Ledford*, 319 Or. at 399-400. Thus, Plaintiffs are entitled to summary judgment on the willful and malicious acts exclusion.

In summary, the wrongful death claim falls within the Policy's coverage, and State Farm has a duty to defend. Because only one claim in the SAC is needed to trigger State Farm's duty to defend, the Court does not analyze the Estate's "survival claim."

**B.    The Earlier Complaints**

Coleman seeks summary judgment against State Farm and a declaration that State Farm had a duty to defend Coleman against the original Complaint and the FAC. State Farm cross moves for summary judgment against Coleman, relying on the same arguments that State Farm used against Plaintiffs' joint motion. The Court grants Coleman's motion and denies State Farm's cross motion as to the original Complaint (ECF 19-1). The Court, however, denies Coleman's motion and grants State Farm's cross motion as to the FAC (ECF 19-4).

    **1.    The Original Complaint**

The wrongful death claim in the original Complaint is not materially different from the wrongful death claim alleged in the SAC. Both state that Coleman knew or *should have known*

about Cote's intentions and the risk of harm to Schuch. Thus, for the same reasons that State Farm has a duty to defend the SAC, State Farm also has a duty to defend Coleman against the original Complaint.

### 2. The First Amended Complaint

Unlike the original Complaint and SAC, however, the wrongful death claim in the first amended complaint (FAC) is materially different for purposes of analyzing the willful and malicious acts exclusion and the business pursuits exclusion. The FAC alleges that "Coleman knew that Cote intended to use the 7.62-caliber SKS semi-automatic rifle against Bethany Schuch." FAC (ECF 19-4) ¶ 12. The FAC also alleges that Coleman and Cote agreed to the *sale* of "an SKS off the books" for "$260." FAC (ECF 19-4) ¶ 7.

Unlike the wrongful death claim alleged in the SAC, the wrongful death claim pleaded in the FAC asserts that Coleman knew Cote's intent. Thus, it is unreasonable to infer that Coleman, who allegedly knew that Cote intended to use the rifle against Schuch, was not acting maliciously when he intentionally transferred the rifle to Cote. Although Coleman may not have intended Schuch's death, based on the allegations in the FAC, Coleman must have intended *some* harm to Schuch when he intentionally transferred his rifle to a person that he "knew" intended to use the rifle against Schuch. Thus, the willful and malicious acts exclusion applies to the SAC, and State Farm had no duty to defend Coleman against the FAC.

The business pursuits exclusion also relieves State Farm of its duty to defend Coleman from the FAC. The FAC contains text messages between Coleman and Cote that are not in either the original Complaint or SAC. Those text messages appear to show that Coleman agreed to sell Cote the rifle *in exchange for* $260. Although Coleman's previous conviction did not answer whether the transfer was a business pursuit or otherwise, the text messages included in the FAC appear to show a business transaction between Coleman and Cote for the rifle. Thus, the transfer,

PAGE 17 – OPINION AND ORDER

according to the FAC, was a business pursuit and thus within the Policy's exclusion from coverage.

In addition, the survival claim alleged in the FAC does not trigger State Farm's duty to defend against the FAC. The survival claim realleges each allegation from the wrongful death claim. FAC (ECF 19-4) ¶ 17. Thus, for the same reasons that the wrongful death claim does not trigger State Farm's duty to defend, the survival claim also does not trigger State Farm's duty to defend against the FAC. The business pursuits and willful and malicious acts exclusions apply and show that State Farm had no duty to defend Coleman against the FAC.

## CONCLUSION

The Court GRANTS Plaintiffs' Joint Motion for Partial Summary Judgment (ECF 15). The Court GRANTS IN PART and DENIES IN PART Plaintiff Coleman's Motion Summary Judgment (ECF 18). The Court DENIES State Farm's Cross Motion for Partial Summary Judgment on the Second Amended Complaint (ECF 20). The Court GRANTS IN PART and DENIES IN PART State Farm's Cross Motion for Partial Summary Judgment on the original Complaint and the First Amended Complaint (ECF 21). To summarize the Court's conclusions, State Farm had a duty to defend Coleman against the original Complaint in the Underlying Lawsuit, had no duty to defend Coleman against the First Amended Complaint in that action, and had and has a duty to defend Coleman against the Second Amended Complaint.

**IT IS SO ORDERED**.

DATED this 4th day of August, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge